## *Ex parte* Oliver.

[89 South. 915. No. 22106.]

1. HABEAS CORPUS. *Court must hear evidence, where accused is not indicted though justice allowed bail.*

Where a person sues out a writ of *habeas corpus* to procure his discharge on a detention alleged to be unlawful before his indictment, the *habeas corpus* court has the power, and it is its duty, to hear the evidence on the question as to whether the relator is probably guilty of a crime, and if the evidence is insufficient to show probable guilt it may and should discharge the prisoner even though a justice of the peace, sitting as a conservator of the peace, has required bail. The *habeas corpus* court is not bound by the judgment of the justice of the peace. If the defendant is indicted but not tried, the *habeas corpus* court is limited to allowing reasonable bail.

2. BAIL. *Twenty thousand dollar bond for one accused of bank robbery held excessive.*

The facts in this case examined, and *held* to show that the bail required is unreasonable and excessive.

APPEAL from circuit court of Panola county.

HON. GREEK L. RICE, Judge.

James Oliver sued out a writ of *habeas corpus* before the circuit judge alleging unlawful detention by J. A. Carter, Sheriff of Panola county. The court sustained a motion to dismiss the writ but announced that the relator could amend his petition to show that the bond was excessive, but refused to hear relator on the merits or hear evidence as to his guilt or innocence, and the relator appeals. Reversed and remanded.

*Jas. B. Boyles,* for appellant.

It was the duty of the presiding judge upon the hearing of the writ of *habeas corpus* to inquire into the cause of the imprisonment or detention of the prisoner, and either discharge or admit him to bail. (Hemingway's Code, vol. 1, sec. 2027, Code of 1906, sec. 2461.)

Since the decision in Wray's case, reported in 30 Miss., page 681, the practice in this state has been to receive testimony *aliunde,* and it was certainly error for the court to refuse to hear proof upon the merits of the appellant's case. *Ex parte Wray,* 30 Miss. 673; *Ex parte Bridwell,* 57 Miss. 39; *Moore* v. *State,* 36 Miss. 137; *Beall* v. *State,* 39 Miss. 715; *Ex parte Jefferson,* 62 Miss. 223. In the case of *Street* v. *State,* this court rendered a very exhaustive opinion and distinguished between the English and American holdings, analyzed case after case, and held that testimony was admissible *aliunde.* *Street* v. *State,* 43 Miss. 1.

Granting that the action of the court, in refusing to hear testimony, was correct, he was certainly in error in refusing to make a reduction of the appellant's bond fixed by the magistrate. *Ex parte Jefferson,* 62 Miss. 223. In the Jefferson case the relator was committed by the magistrate without any preliminary examination, and the court after his commitment reduced his bail bond in *habeas corpus* proceedings.

I respectfully submit that to adopt any such procedure as that adhered to by the presiding judge in the trial of this case, would leave the liberty of those charged with crime entirely in the hands of justices of the peace who are frequently ruled by prejudice, and would put asunder the constitutional rights of prisoners to bail.

*D. C. Enochs,* assistant attorney-general, for the state.

Counsel for appellant contends that the learned circuit judge committed two errors in this cause: (1) in refusing to hear testimony as to the guilt or innocence of the appellant of the crime charged against him; and (2) in refusing to reduce the amount of the bond fixed by the justice of the peace.

The writ of *habeas corpus* extends to all cases of illegal confinement or detention by which any person is deprived of his liberty. But if a person charged with the commission of a felony waives the examination before the justice

127 Miss.—14

of the peace before whom he is brought for a preliminary trial under the statute, and is confined in jail by the *mittimus* of the justice of the peace for failure to make the bond required, he cannot sue out a writ of *habeas corpus* for his release on the ground that he is innocent of the charge against him. He may sue out a writ of *habeas corpus* on the ground of the excessiveness of the amount of the bond, because if he is confined because of his inability to make the bond by reason of the excessiveness thereof, he is illegally confined, because excessive bail cannot be required.

This court, in the case of *Street* v. *State,* 43 Miss. 1, at page 21, has said: "The writ of *habeas corpus* is in nature of a writ of error, to examine into the legality of the imprisonment, and therefore it commands the caption and cause of detention to be returned. If the relator was in custody by commitment of a justice of the peace or other inferior magistrate, the custom was to send with the writ a *certiorari* to send up the depositions on which the commitment was predicated. If there was no pretense of imputing to the prisoner an indictable offense, he will be discharged. But it is more usual to bail or remand according to the nature of the charge."

And while I have found no case that holds that one who waives preliminary examination, cannot be heard on *habeas corpus* to claim his innocence of the crime charged for releases. I submit that he has no such right. I find no authority holding that he has such a right, and the counsel for appellant cites no such authority. The purpose of a preliminary examination before a justice of the peace is to ascertain whether or not the accused is probably guilty of the crime charged and should be bound over to await action of the grand jury upon such charge. If the preliminary trial is actually had, I concede that the person bound over has a right to sue out a writ of *habeas corpus,* if he does not agree with the justice of the peace. But I cannot believe that a person who waives a preliminary trial, and who is in jail in default of an appearance bond required by the

justice of the peace, can, on *habeas corpus,* claim a release
on the ground that he is innocent of the charge and thereby
in illegal confinement.  He may complain of the excessive-
ness of the bond, but he cannot complain that he should
not have been bound over to await the action of the grand
jury by the justice of the peace.  His waiver of the pre-
liminary trial left nothing for the justice of the peace to
do but to bind him over to await the action of the grand
jury.  It cannot be said that the justice of the peace, not-
withstanding the waiver by the accused of the preliminary
trial, should have proceeded therewith in order to ascer-
tain if it was probable that the accused was guilty.

In the case of *Wray* v. *State,* 30 Miss. 681, cited by op-
posing counsel in support of his contention that the judge
should have heard evidence as to the guilt or innocence of
appellant, is not in point.  In that case Wray had been
indicted for murder, and the question was as to his right
to bail pending his trial.  It was contended that the court
could discharge Wray if the court believed from the evi-
dence that Wray was not guilty of any crime.  After in-
dictment, the court cannot discharge on *habeas corpus* the
person so indicted.  In view of the fact that Wray was en-
titled to bail under the law unless his guilt was evident
or the presumption thereof great, this court held that the
judge on *habeas corpus* should hear the evidence touching
his guilt or innocence in order that he might ascertain
whether or not the proof was evident or presumption great
of his guilt.  In the case of *Ex Parte Jefferson,* 62 Miss.
223, cited by counsel for appellant, it seems that the waiver
of the preliminary trial had something to do with the de-
nial of the *habeas corpus* to Jefferson.  As I have said, I
have been unable to find a case in point for or against the
contention of the state in this case.  But it stands to reason
that a man who waives a preliminary examination thereby
consents to the legality of his being bound over to await the
action of the grand jury on the charge before the justice
of the peace, and cannot thereafter claim that his confine-
ment for failure to give the bond required for his appear-

ance to await the action of the grand jury is illegal confinement, except on the sole ground of the excessiveness of the bond required.

Now as to the other contention of opposing counsel that the amount of bail is excessive, the evidence upon that point is contained in the record, and it cannot be said that the judge below erred in leaving the amount thereof as fixed by the justice of the peace.

Ethridge, J., delivered the opinion of the court.

James Oliver was arrested in the state of Tennessee by the sheriff of Panola county, Miss., without having obtained a warrant in the state of Tennessee or resorting to extradition proceedings. Oliver was brought back into Mississippi without it being disclosed to him what charge was made against him until after he reached this state. The sheriff placed Oliver in jail instead of carrying him to the conservator of the peace to answer some crime charged, and on the 8th day of June, Oliver sued out a writ of *habeas corpus* before the circuit judge, alleging that he was unlawfully detained by J. A. Carter, sheriff of Panola county in a jail at Batesville, Miss., on a charge, according to the sheriff, of robbing a bank at Como, Miss. That no legal proceedings have been instituted charging the petitioner with said offense, and that the only knowledge he has of the matter is that he has been informed by the sheriff that he is held for the robbery of said bank. He alleged that he was not guilty of the charge or any part thereof, but was deprived of his liberty unlawfully and was entitled to be discharged. This petition was sworn to and filed on the 8th day of June, 1921, and a writ was directed to be issued returnable before the judge at Sardis on the 16th day of June, 1921. The sheriff answered that he had the relator in custody under authority of a *mittimus* executed by one J. L. Burgin, justice of the peace of district No. 1, Panola county, a copy being filed with the answer, and that Oliver failed to make and execute bond as required of him by said order and *mittimus*, said *mittimus* having been

issued by said justice of the peace previous to judgment and affidavit charging burglary, and a copy of the affidavit and judgment being filed with the answer. The *mittimus* filed is dated June 15, 1921, and on the same day an order was made by the justice of the peace requiring the defendant or relator to furnish bond in the sum of twenty thousand dollars, and that he stand committed until such bond be made. The affidavit filed in the record is dated on the 13th day of May, 1921, and on the same day a writ was issued by the justice of the peace, commanding the sheriff to take Oliver into custody and bring him before the justice of the peace to answer the state on a charge of burglary and grand larceny.. There is no return in the record on this warrant. The affidavit alleges the offense to have occurred on the 7th day of May, and the sum alleged to have been taken was five hundred dollars. When the writ was returned on the 16th day of June the district attorney appeared and moved the court to dismiss the petition on the ground that said Oliver was arrested on the charge of burglary and larceny, and that the justice of the peace had, and still has, full and complete jurisdiction over the merits of the case, upon which the defendant was arrested, and that at the filing of the petition the said charge was then pending in the court of the said justice of the peace, and that he at all times was ready for a trial of said cause; second, that the justice of the peace having sole and exclusive jurisdiction of said cause set the cause for hearing on the 15th day of June, 1921, and that the defendant waived hearing, and that judgment was entered, requiring him to give bond in the sum of twenty thousand dollars; and, third, that the *habeas corpus* court had no jurisdiction under the petition as filed to pass upon matters set out therein.

The court sustained the motion to dismiss but announced that if the relator so desired he could amend his petition so as to show the bond required was excessive, but refused to hear the relator on the merits or to hear evidence as to the guilt or innocence of the charge. The relator excepted, and thereafter amended his petition so as to charge

that the bond required by the justice of the peace was excessive. On the hearing of this part of the case the relator testified that he had property or interest in property in the state of Tennessee amounting to three thousand, five hundred dollars in value, and that he could not give bond in excess of that amount. That he had no property in Mississippi, and no one to make his bond. The sheriff and deputy sheriff testified that, while he could not make bond in Mississippi, in their opinion he could put up a cash bond because of his connection with certain parties in Memphis, Tenn.

It appears that some party in Memphis, Tenn., had signed the bond, and thereafter scratched his name therefrom without delivering the bond, and refused to make it. Nothing appears to show that the appellant himself has sufficient cash money to make the bond required, nor does it appear what relation he bore to the parties in Tennessee, nor that they would make the bond or that they were under any obligation to the relator so to do. The deputy sheriff states that the relator received a check for eight hundred and eighty-three dollars from one Nolen in Tennessee, and that this check was for his attorney appearing in the case. One Waggner testified that Nolen owned seven drug stores, and that he had signed the bond for one man named Chambers, but struck his name off the bond, and that Chambers made a ten thousand dollar cash bond, and he stated that the relator could make the bond required of him through Nolen and others. The court refused to reduce the bond fixed by the justice of the peace, and ordered that the bond be fixed at the sum of twenty thousand dollars, and that the relator be remanded to jail until said bond was made, and ordered that the relator be removed to Tallahatchie county jail at Charleston, Miss. No proof was taken in open court nor any reason stated in the order for removing the relator to Tallahatchie county.

We think the court was in error in refusing to hear the relator on the merits of the charge. There had been no indictment found against the relator by the grand jury and

the jurisdiction of the justice of the peace extended only to determining whether there was proper cause for an indictment or proper evidence of guilt. The judgment of the justice of the peace was not conclusive upon this point. He had no jurisdiction to try the case upon its merits so as to convict or discharge, and the relator could not be tried for a crime until the grand jury indicted him. The *habeas corpus* court had a right to inquire into the guilt or the innocence of the relator for the purpose of determining whether there was sufficient evidence to warrant his detention, and he had the power to discharge the prisoner if the evidence was insufficient, provided no indictment had been returned by the grand jury. He was not bound by the judgment of the justice of the peace.

On the second point we think the court was also in error for the reason that a twenty housand dollar bond under the facts of this record was clearly excessive. The evidence of the relator was that his ability to give bond was limited to three thousand, five hundred dollars. The evidence of the sheriff was based upon opinion, and there is nothing in the bill of exceptions that convinces us that Nolen or any other parties would put up twenty thousand dollar bond for the relator. While the *habeas corpus* court is not limited in its action to the testimony of the relator on his ability, still there must be something in the nature of substantive evidence, apart from mere opinion, that the party could make the bond required of him. A bond must be reasonable. The condition of the relator to give bond, the nature and character of the offense charged, and the maximum punishment to be inflicted on a conviction are all to be taken into consideration in determining the amount of bond. The public policy of the state favors bail, and under modern conditions criminals can be located and returned for trial much more easily and efficaciously than in former years.

The judgment will be reversed, and the cause remanded to be heard before the circuit judge at such reasonable time as he may fix. So ordered.

*Reversed and remanded.*